IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| In re: BETTY I. FRENCH | * | Case No. 00-6-3163-JS |
| In re: ELWOOD DEAN FRENCH | | Case No. 01-5-6579-JS |
| | * | |

* * * * * *   *   * * * * * * * *

REAL ESTATE & CONSTRUCTION
 FUND OF MIAMI, LTD.
v.                              Civil Action No. WMN-03-549
                                   (consolidated with
GEORGE LIEBMANN, TRUSTEE,         Civil Action No. WMN-
                                       03-550)
et al.

## MEMORANDUM

These consolidated appeals challenge a December 23, 2002 Order of the Bankruptcy Court which authorized the sale of certain real property of the Debtors free and clear of any liens purported to be held by Appellee The Real Estate & Construction Fund of Miami, LTD. (REMiami). The factual and procedural background leading up to these appeals is as follows.

On October 10, 2000, Elwood Dean French filed a chapter 7 petition in the United States Bankruptcy Court for the Middle District of Florida. That case was subsequently transferred to Maryland. On October 20, 2000, Peninsula Bank filed an involuntary Chapter 7 case against Betty Irene French in the Bankruptcy Court for this District. James Wooten was initially appointed trustee in both cases, but he was later

replaced by George Liebmann.

At the time that these bankruptcy cases were filed, a piece of residential real estate known as 3999 Green Hill Church Road, in Wicomico County, Maryland (the Property) was jointly titled in the names of Elwood and Betty French (the Debtors). The Property was subject to a judgment in the amount of $397,425.10 in favor of Peninsula Bank (Peninsula). The Property was also subject at one time to an Indemnity Mortgage from the Debtors to Sharon Savings and Loan, dated October 1, 1986 in the original principal amount of $175,000.[1] By an instrument dated September 6, 1996 and recorded in the Land Records, this mortgage was assigned to Chesapeake Group, Inc., a Bahamian corporation (Chesapeake). This mortgage was subsequently reassigned to Appellant REMiami, which is also a Bahamian corporation. It is this mortgage that is at the heart of these appeals.

On or about May 30, 2000, before this assignment to REMiami, and before the filing of the bankruptcy cases, Appellee Peninsula filed an action in the Circuit Court for Wicomico County seeking, <u>inter alia</u>, a declaration that the Chesapeake Mortgage was "released, paid and satisfied." As

---

[1] In addition, the property was subject to other obligations, including a mortgage in favor of Wendover Funding and various tax liens. These obligations have either been satisfied, or are otherwise not relevant to this action.

grounds, Peninsula noted that the Frenches were making no payments on account of the mortgage. Peninsula averred that "Elwood Dean French and Betty I. French have by design caused their corporate alter ego, Defendant Chesapeake Group, Inc., to appear to have a bona fide lien of record, for the purpose of impairing and thwarting the ability of [Peninsula Bank] to realize upon the collateral securing its claim." Peninsula Bank v. Elwood Dean French, Civil No. 00-679, Complaint at ¶ 16.

On February 5, 2002, James Wooten substituted himself for Defendants Elwood and Betty French as a party in the Wicomico County action.[2] Shortly thereafter, on March 26, 2002, Judge William Simpson of the Wicomico County Circuit Court entered an order granting final judgment against Chesapeake and in favor of Peninsula Bank. The order provided, inter alia, that the Chesapeake mortgage was "declared to be RELEASED, PAID AND SATISFIED." Almost three months later, on June 24, 2002, Chesapeake moved to vacate the order, but Judge Simpson denied that motion on August 12, 2002. On September 11, 2002, Chesapeake filed a notice of appeal with respect to the denial

---

[2] Although the Trustee entered an appearance in the Wicomico County action, it does not appear that he took an active role in the litigation of this issue. The reason for his lack of involvement is obvious: Peninsula's claim secured by the Property exceeded the Property's market value so that the elimination of the Chesapeake/REMiami lien would not add any benefit to the estate.

of the motion to vacate.

On November 1, 2002, Peninsula filed a "Notice of Substitution of Party Appellant" with the Court of Special Appeals, seeking to substitute REMiami for Chesapeake as the real party in interest in the appeal. Chesapeake opposed the substitution, but the Court of Special Appeals accepted the notice of substitution, over objection, on December 18, 2002. On February 6, 2003, the Court of Special Appeals dismissed the appeal as moot.[3] The Court of Special Appeals issued its mandate in the action on March 10, 2003.

On November 26, 2002, while the appeal of the Wicomico Circuit Court order remained pending, the Trustee filed motions in both bankruptcy actions for authority to sell the Property free and clear of liens. The motions specifically requested that the lien of Chesapeake, REMiami, or any other entity to which that lien might be assigned, not attach to the proceeds of the sale, based upon the state court determination that the mortgage had been "paid, settled, and satisfied." REMiami filed a limited opposition to the motions, agreeing to the sale of the Property, but challenging the motions to the extent that the Court would prevent its interest from attaching to the proceeds. After a hearing held on December

---

[3] The record does not reveal why the appeal had become moot. Presumably, it was due to the sale of the Property on January 7, 2003. See infra.

20, 2002, the Bankruptcy Court granted the Trustee's motion to authorize the sale, including the request that REMiami's interest not attach to the proceeds. The Property was sold on or about January 7, 2003, for a contract sales price of $275,000. The proceeds were distributed to Peninsula.

Peninsula has moved to dismiss these appeals on two grounds.[4] Paper No. 8 in Civil Action No. WMN-03-550. First, Peninsula argues that the sale of the property renders these appeals moot. It is true that an appellant's failure to obtain a stay pending appeal might moot an appeal that intends to void a sale of estate property. See In re Vanguard Oil & Service Co., Inc., 88 B.R. 576 (E.D.N.Y. 1988). Here, however, where the appeals challenge not the sale but the distribution of proceeds, that distribution can be undone, and the failure to obtain a stay does not render the appeal moot. See In re Blumer, 66 B.R. 109 (Bankr. App. 9th Cir. 1986). This is particularly true when the party receiving the disputed disbursement is a party to the appeal. See id. at 112 (holding that an appeal is not moot where appellate court

---

[4] Peninsula raises a third argument in its motion to dismiss that goes more to the merits of the appeal itself. Peninsula argues that the appeal is an impermissible collateral attack on the final and unappealable judgment of the Wicomico County Circuit Court. This argument will be addressed below, in the context of the Court's discussion of the merits (or lack thereof) of REMiami's appeal.

could structure effective relief by ordering the return of erroneously disbursed funds).

Peninsula also argues that the appeals must be dismissed because Appellant does not have the legal capacity to bring suit. In support of that argument, Peninsula supplies the affidavit of an attorney in the Bahamas in which he states that he searched the Registrar General's records and learned that REMiami was struck from the Register for non-payment of fees. Affidavit of Kirk Seymour. REMiami, however, responds to this portion of Appellee's motion by submitting a Certificate of Good Standing from the Registrar General dated April 10, 2003, indicating that REMiami is still on the Register of the International Business Companies and has paid all fees due and payable. See Exh. B to Opp. to Mot. to Dismiss. In light of that submission, the Court will assume that REMiami is a corporation in good standing.[5]

Thus, the motion to dismiss the appeal will be denied.

Turning to the merits of the appeal, the gravamen of REMiami's argument is that once the bankruptcy cases were filed, the Circuit Court for Wicomico County lacked

---

[5] Counsel for REMiami admitted, at least implicitly, in the hearing before the Bankruptcy Court that his client had lost its charter for failure to pay a fee. See Trans. of Dec. 20, 2002 hearing at 24. Apparently, at some point after the hearing but before April 10, 2003, REMiami paid its delinquent fees in order to bring itself back into good standing.

jurisdiction to continue to adjudicate Peninsula's claims due to the automatic stay provisions of 11 U.S.C. § 362. In REMiami's view, Peninsula's claim was in the nature of a § 544 fraudulent transfer claim, which could only have been brought by the Trustee. Because the claim was litigated by Peninsula, and not the Trustee, and in violation of the automatic stay, REMiami contends that the order of the Wicomico County Circuit Court was void, and the Bankruptcy Court erred in giving it any effect.

As REMiami's counsel readily acknowledged before the Bankruptcy Court, the position taken by REMiami in this litigation is "bizarre and somewhat absurd." Dec. 20, 2002 Trans. at 16. On that point, the Court agrees. Counsel for REMiami was compelled to argue that the circumstances alleged in the Peninsula claim, i.e., that "Dean and Betty French took sufficient sums of monies to pay off the preexisting owner of [the Sharon Savings and Loan] mortgage, deposited those moneys into a Bahamian corporation, and then used that corporation to buy the claim of the preexisting mortgage holder," presented what would be a "fairly classic" § 544 claim. Id. at 17-18. He then faults the Trustee for not bringing this facially meritorious claim against his own client.

The Court concludes that REMiami lacks standing to challenge any alleged violation of the § 362 automatic stay.

7

As the Ninth Circuit has observed, "the majority of jurisdictions which have considered standing under the automatic stay provision, 11 U.S.C. § 362, have concluded that section 362 is intended solely to benefit the debtor estate. Language from many cases indicates that, if the trustee does not seek to enforce the protections of the automatic stay, no other party may challenge acts purportedly in violation of the automatic stay." In re Pecan Groves, 951 F.2d 242 (9th Cir. 1991) (citations omitted); See also Winters v. George Mason Bank, 94 F.3d 130 (4th Cir. 1996)(observing that section 362 is a "shield" for the benefit of the estate, not a "sword" to be used against it).

The self-acknowledged absurdity of REMiami's position perhaps best demonstrates why standing to challenge alleged § 362 stay violations is limited. The Wicomico County Circuit Court and Court of Special Appeals proceedings led to a valid and final judgment that eliminated REMiami's interest in the Property, on grounds that had nothing to do with the Debtor's bankruptcy. REMiami now seeks to use the happenstance that the Frenches were placed into bankruptcy before the completion of those proceedings as an opportunity to undo the finality of that judgment, presumably so that it can take another bite at

the apple.  That is not the purpose of § 362.[6]

The decision of the Bankruptcy Court will be affirmed.  A separate order will issue.

/s/

William M. Nickerson
Senior United States District Judge

Dated: September 11, 2003

---

[6] Even should it be found that REMiami has standing to challenge the state court proceedings, and it was determined that those proceedings were in violation of the automatic stay, the Bankruptcy Court has the power to ratify a state court judgment obtained in violation of the automatic stay where equity so requires.  See In re Sililiano, 13 F.3d 748 (3rd Cir. 1994) (observing that bankruptcy court can grant retroactive relief from stay and thereby validate proceedings that would otherwise be void ab initio); Matthews v. Rosene, 739 F.2d 249 (7th Cir. 1984) (although ordinarily orders issued in violation of § 362 stay are void, Bankruptcy Court as court of equity must nevertheless be guided by equitable principles in exercising its jurisdiction); In re Oliver, 38 B.R. 245 (Bankr D. Minn. 1984) (noting that under 11 U.S.C. § 362(d), a bankruptcy court may ratify a state court judgment obtained in violation of the automatic stay).  Here, the equities undeniably support ratification of the state court judgment.